1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| | CASE NO. SACV 13-1300-JLS (FFMx) |
| IN RE BIOLASE, INC. SECURITIES LITIGATION | **ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT (Doc. 72) AND SETTING A FAIRNESS HEARING FOR OCTOBER 9, 2015 AT 2:30 P.M.** |

**I.**     **INTRODUCTION**

Before the Court is an unopposed Motion for Preliminary Approval of Settlement filed by Lead Plaintiff Pradeep Khurana.  (Mot., Doc. 72.)  The Motion asks the Court to preliminarily approve the proposed settlement, conditionally certify the settlement class, and approve the form and method of class notice. Having read and considered the papers and taken the matter under submission, the Court GRANTS the Motion and sets a Fairness Hearing for **October 9, 2015, at 2:30 p.m.**

**II.**     **BACKGROUND**

In August 2013, two proposed class actions were filed against Defendants Biolase, Inc., Federico Pignatelli, Alexander K. Arrow, and Frederick D. Furry.  The two cases were captioned *Brady Adams v. Biolase, Inc. et al.*, Case No. SACV 13-1300-JLS (FFMx) (C.D. Cal. Aug. 23, 2013) and *Ralph Divizio v. Biolase Inc et al.*, Case No. SACV 13-1317-JLS (FFMx) (C.D. Cal. Aug. 26, 2013).  On December 10, 2013, the Court consolidated these cases into the present action and appointed Pradeep Khurana as Lead Plaintiff.  (Doc. 31.)  The Court also appointed Sandy Liebhard and Joseph Seidman, Jr. as lead counsel for the putative class and Avi Wagner as liaison counsel.  (Id.)

Lead Plaintiff filed a Consolidated Class Action Complaint for violations of federal securities laws on February 24, 2014, asserting claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 on behalf of "all persons who purchased Biolase common stock [between] November 5, 2012 through August 13, 2013 . . ."  (Compl., Doc. 36, ¶ 1.)  Lead Plaintiff alleges Defendants made materially false and misleading statements about (1) the growth of, and demand for, Biolase's WaterLase dental laser systems, (2) the general acceptance and adoption of dental lasers by dentists, (3) Biolase's liquidity, and (4) a "near-term

2

liquidity/cash crisis Biolase was experiencing." (Id. ¶ 3.) Lead Plaintiff alleges these statements artificially inflated Biolase's stock price and that class members were damaged when the stock fell upon these statements' falsity becoming known. (Id. ¶ 29.)

On May 9, 2014, Defendants moved to dismiss the Complaint. (Docs. 41, 42.) Shortly before the hearing, the parties agreed in principle to settle the case. (Doc. 63.) On April 13, 2015, Lead Plaintiff filed the instant Motion. (Mot.)

The Settlement Agreement provides for a Gross Settlement Fund of $1,750,000, which Defendants will deposit into an escrow account within ten days of preliminary approval. (Settlement Agreement, Doc. 74-7, §§ 1.2, 1.31, 2.1.) Lead Plaintiff's counsel may apply for attorneys' fees of up to 25% of the Gross Settlement Fund as well as reimbursement of costs. (Id. § 7.1.) Lead Plaintiff's counsel would also be permitted to allocate up to $100,000 of the Gross Settlement Funds for settlement administration costs. (Id. § 2.3.) After deduction of attorneys' fees and costs, claims administration costs, and any taxes (*see* id. § 2.8), the remaining Net Settlement Fund would be distributed to class members who timely submitted a Proof of Claim on a *pro rata* basis.[1] (Id. § 6.5) Only class members who incurred an actual monetary loss during the class period would be eligible for payment. (Proposed Notice, Doc. 74-2, at 7.) This includes class members who either (1) purchased and sold Biolase stock at a loss during the class period or (2) purchased Biolase stock during the class period at a price higher than $1.87 per share and held it at the end of the class period. (Id.) Class Counsel estimates that if all class members submitted claims for each eligible share, the average distribution

_____

[1] Specifically, each class member would receive the fraction of the Net Settlement Fund comprising their recognized loss divided by the total of all recognized losses for the Net Settlement Fund. (Proposed Notice, Doc. 74-2, at 7.)

1  per share would be approximately $.10 before deduction of fees and expenses.  (Id.
2  at 1.)

3        The Gross Settlement Fund is non-reversionary; following distribution, any
4  remaining balance after six months would be redistributed on a *pro rata* basis to
5  those class members who timely negotiated their checks and would receive at least
6  $10 from such redistribution.  (Settlement Agreement § 6.10.)  Any remaining
7  balance would then be donated to an "appropriate 501(c)(3) non-profit organization
8  designated by Lead Plaintiff and approved by the Court."  (Id.)

9        Upon the Court's final approval, class members would release all claims
10  against Defendants "arising out of, based upon, or concerning the purchase of
11  Biolase common stock during the Class Period in connection with the subject matter
12  of the Litigation and the acts, facts, statements or omissions that were or could have
13  been alleged" in it.  (Id. §§ 1.24, 1.8, 8.1.)

14

15        **A.**    **Legal Standard**

16        Plaintiffs seek conditional certification of the class pursuant to Fed. R. Civ. P.
17  23.  When conditionally certifying a class for settlement purposes, a court "must pay
18  undiluted, even heightened, attention to class certification requirements."  *Staton v.*
19  *Boeing Co*., 327 F.3d 938, 952 (9th Cir. 2003) (internal quotation marks and citation
20  omitted).

21        "To obtain class certification, a class plaintiff has the burden of showing that
22  the requirements of Rule 23(a) are met and that the class is maintainable pursuant to
23  Rule 23(b)."  *Narouz v. Charter Commc'ns, LLC*, 591 F.3d 1261, 1266 (9th Cir.
24  2010).  "Rule 23(a) ensures that the named plaintiffs are appropriate representatives
25  of the class whose claims they wish to litigate."  *Wal-Mart Stores, Inc. v. Dukes*, 131
26  S. Ct. 2541, 2550 (2011).  Under Rule 23(a), the party seeking certification must
27  demonstrate, first, that:
28

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

*Id.* at 2548 (citing Fed. R. Civ. P. 23(a)).  "Second, the proposed class must satisfy at least one of the three requirements listed in Rule 23(b)."  *Id.*  Rule 23(b) is satisfied if:

(1) prosecuting separate actions by or against individual class members would create a risk of:
> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Fed. R. Civ. P. 23(b).  "Rule 23 does not set forth a mere pleading standard," thus "[a] party seeking class certification must affirmatively demonstrate his compliance with the Rule – that is, he must be prepared to prove that there are *in fact*

sufficiently numerous parties, common questions of law or fact, etc." *Dukes*, 131 S. Ct. at 2551.  This requires a district court to conduct a "rigorous analysis" that frequently "will entail some overlap with the merits of the plaintiff's underlying claim." *Id.*

## B.   Requirements Under Rule 23(a)

### 1.   Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "As a general rule, classes of forty or more are considered sufficiently numerous." *Mazza v. Am. Honda Motor Co.*, 254 F.R.D. 610, 617 (C.D. Cal. 2008), *vacated on other grounds* 254 F.R.D. 610 (9th Cir. 2012); *see also Harris v. Palm Springs Alpine Estates*, 329 F.2d 909, 913-914 (9th Cir. 1964) ("'Impracticability' does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class.") (internal quotation marks and citation omitted).  Here, it is obvious that the number of shareholder class members far exceeds what is necessary for certification, given that Biolase had more than 31 million shares of common stock outstanding held by geographically dispersed class members.  (Mem., Doc. 75, at 7.)  Under similar circumstances, courts have found the numerosity requirement met.  *See In re Juniper Networks, Inc. Sec. Litig.*, 264 F.R.D. 584, 588 (N.D. Cal. 2009) ("Some courts have assumed that the numerosity requirement is met in securities fraud suits involving nationally traded stocks."); *In re Applied Micro Circuits Corp. Sec. Litig.*, No. 01CV0649KAJB, 2003 WL 25419526, at *3 (S.D. Cal. July 15, 2003) (finding the numerosity requirement met where the defendant issued 298 million shares of common stock during the Class Period and estimated that the Class had thousands of members).

Numerosity is therefore satisfied.

1

2. **Commonality**

2       Rule 23(a)(2) requires that "there are questions of law or fact common to the

3 class." Fed. R. Civ. P. 23(a)(2). "Commonality requires the plaintiff to demonstrate

4 that the class members 'have suffered the same injury.'" *Dukes*, 131 S. Ct. at 2551

5 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). "This does not

6 mean merely that they have all suffered a violation of the same provision of law,"

7 but instead that their claim(s) "depend upon a common contention . . . of such a

8 nature that is capable of classwide resolution – which means that determination of

9 its truth or falsity will resolve an issue that is central to the validity of each one of

10 the claims in one stroke." *Id.* Although "for purposes of Rule 23(a)(2) even a single

11 common question will do," *id.* at 2556 (internal citation and quotation marks

12 omitted), "[w]hat matters to class certification . . . is not the raising of common

13 'questions'– even in droves – but, rather the capacity of a classwide proceeding to

14 generate common *answers* apt to drive the resolution of the litigation." *Id.* at 2551

15 (emphasis in original) (citation omitted). Moreover, in the context of securities

16 fraud litigation, "[r]epeated misrepresentations by a company to its stockholders

17 satisfy the commonality requirement of Rule 23(a)(2)." *Juniper*, 264 F.R.D. at 588.

18       Here, Lead Plaintiff alleges Defendants intentionally and materially

19 misrepresented (1) demand for Biolase's products and dental lasers generally and

20 (2) Biolase's financial condition. (Compl. ¶¶ 1, 3, 29.) These allegations involve

21 questions of law and fact common to all class members including: (1) whether

22 Defendants violated federal securities laws by making materially false and

23 misleading statements regarding Biolase's products and financial condition; (2)

24 whether Defendants knew these statements were false and misleading; (3) whether

25 Biolase's share price was artificially inflated because of Defendants'

26 misrepresentations and omissions; and (4) if class members were damaged, the

27 appropriate measure of these damages. (*See* Mem. at 8.) These common questions

28

satisfy the commonality requirement.  *Cf. In re Alco Intern. Group, Inc.*, *Sec. Litig.*, 158 F.R.D. 152, 154 (S.D. Cal. 1994) ("Classic securities fraud cases involving a class of purchasers allegedly defrauded over a period of time by similar misrepresentations satisfy the common question requirement."); *In re MDC Holdings Sec. Litig.*, 754 F. Supp. 785, 801 (S.D. Cal. 1990) ("Here, the existence, nature, and significance of material omissions and misrepresentations are issues common to all class members.").

### 3.   **Typicality**

Rule 23(a)(3) requires "the claims or defenses of the representative parties [to be] typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical."  *Hanlon*, 150 F.3d at 1020.  As to the class representative, "[t]ypicality requires that the named plaintiffs be members of the class they represent."  *Id.* at 613 (citing *Falcon*, 457 U.S. at 156).  The commonality, typicality, adequacy-of-representation requirements "tend to merge" with each other.  *Dukes*, 131 S. Ct. at 2551 at n.5 (citing *Falcon*, 457 U.S. at 157-58 n.13).  As a purchaser of Biolase stock during the Class Period, Lead Plaintiff is a member of the proposed class and has suffered the same injury as his fellow class members. (Mem. at 9.)  The typicality requirement is therefore satisfied.

### 4.   **Adequacy**

Rule 23(a)(4) permits certification of a class action only if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members

and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).  In the securities fraud litigation context, the Ninth Circuit has stated that no conflict exists when the lead plaintiff's claims and the other class members' claims arise out of the same set of facts.  *See, e.g., In re Mego Financial Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000) (stating, in dicta, that there would be no conflict between Lead Plaintiff and other class members if all class members had purchased in the same period).

Here, Lead Plaintiff is an adequate representative of the Class.  Lead Plaintiff's claims arise out of the same set of facts as the class members' claims, and his interest in obtaining the maximum recovery is coextensive with that of the class members.  This is sufficient to satisfy the typicality requirement.  *See In re Surebeam Corp. Sec. Litig.*, No. 03 CV 1721JM(POR), 2004 WL 5159061, at *6 (S.D. Cal. Jan. 5, 2004) (finding requirement of typicality met where every proposed plaintiff alleged the same misrepresentations in defendant's financial statements). The Court finds no sign of any potential conflict between Lead Plaintiff and the rest of the Class.

As to the adequacy of Lead Plaintiff's counsel, the Court must consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class."  Fed. R. Civ. P. 23(g)(1)(A).  Lead Plaintiff's counsel has submitted biographies for Jeffrey Haber and Joseph Seidman, members of the firm Bernstein Liebhard LLP, which demonstrate that these attorneys have significant experience in similar securities fraud class action suits.  (Doc. 75, Ex. B, at 18-20, 33-34.)  Based on counsels' experience and their work in the matter thus far, the Court concludes

that Lead Plaintiff's counsel satisfy the adequacy requirements under Rule 23(g).
Therefore, the Court appoints Jeffrey Haber and Joseph Seidman as Class Counsel
in this matter.

### C.   <u>Requirements Under Rule 23(b)</u>

In addition to establishing the elements of Rule 23(a), a plaintiff must also
satisfy one of the three elements of Rule 23(b).  Lead Plaintiff seeks certification
under Rule 23(b)(3), alleging that common questions predominate over any
individual issues that may exist in this case.  (Mot. at 12.)  Under Rule 23(b)(3), a
class action may be maintained if: "the court finds that the questions of law or fact
common to class members *predominate* over any questions affecting only individual
members, and that a class action is *superior* to other available methods for fairly and
efficiently adjudicating the controversy."  Fed. R. Civ. R. 23(b)(3) (emphasis
added).  The Court may consider:

> (a) the class members' interests in individually controlling the
> prosecution or defense of separate actions;
> (b) the extent and nature of any litigation concerning the controversy
> already begun by or against class members;
> (c) the desirability or undesirability of concentrating the litigation of
> the claims in the particular forum; and
> (d) the likely difficulties in managing a class action.

Fed. R. Civ. R. 23(b)(3).  Lead Plaintiff's claim satisfies both the predominance and
superiority requirements.

As to the predominance factor, the Supreme Court has explained that it "tests
whether proposed classes are sufficiently cohesive to warrant adjudication by
representation." *Amchem Prods., Inc. v.* Windsor, 521 U.S. 591, 623 (1997).  "When
common questions present a significant aspect of the case and they can be resolved

for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022 (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1778 (2d ed. 1986)). "Predominance is a test readily met in certain cases alleging . . . securities fraud . . . ." *Amchem,* 521 U.S. at 625.

Here, the common questions described above – whether Defendants made materially false and misleading statements about Biolase's products and financial condition, whether they knew these statements were false and misleading, and whether Biolase's share price was artificially inflated as a result – substantially predominate over the limited individual issues to be resolved, namely the question of damages. Moreover, while damage amounts may differ among class members, liability and the proper measure of damages can be determined on a class-wide basis.[2] *Cf. In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 640 (C.D. Cal. 2009) ("[T]he critical questions of what Defendants said, what they knew, what they withheld, and with what intent they acted, are central to all class members' claims. . . . Issues such as certain members' damages, timing of sales and purchases, or standing to file suit, do not have the same primacy.").

The Court also finds that a class action would be a superior method of adjudicating class members' claims. "The superiority inquiry under Rule 23(b)(3) requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case." *Hanlon*, 150 F.3d at 1023. "This

---

[2] There are no individual issues to preclude certification, as reliance can be proven on a classwide basis. In *Amgen Inc.*, the Supreme Court recently reaffirmed the fraud-on-the-market theory, noting that "[t]he fraud-on-the-market theory [] facilitates class certification by recognizing a rebuttable presumption of classwide reliance on public, material misrepresentations when shares are traded in an efficient market." *Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, 133 S. Ct. 1184, 1193 (2013).

determination necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution." *Id.* Here, each member of the class pursuing a claim individually would burden the judiciary and run afoul of Rule 23's focus on efficiency and judicial economy. *See Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 946 (9th Cir. 2009) ("The overarching focus remains whether trial by class representation would further the goals of efficiency and judicial economy."). Further, litigation costs would likely "dwarf potential recovery" if each class member litigated individually. *Hanlon*, 150 F.3d at 1023. "[W]here the damages each plaintiff suffered are not that great, this factor weighs in favor of certifying a class action." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1198 n.2 (9th Cir. 2001) (quoting *Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 652 (C.D. Cal. 1996)).

Considering the non-exclusive factors under Rule 23(b)(3)(A)-(D), the Court finds that class members' potential interests in individually controlling the prosecution of separate actions and the potential difficulties in managing the class action do not outweigh the desirability in concentrating this matter in one litigation. *See* Fed. R. Civ. P. 23(b)(3)(A), (C). The Court does not foresee any likely difficulties in managing this case as a class action. Moreover, the Supreme Court has stated that the predominance test is "readily met in certain cases alleging consumer or securities fraud." *Amchem*, 521 U.S. at 625. Therefore, the Court certifies the following class for purposes of settlement:

> All Persons who purchased BIOLASE common stock during the period November 5, 2012 through August 13, 2013, inclusive.
> Excluded from the Settlement Class are Defendants, members of the immediate family of the Individual Defendants, any entity in which any Defendant has or had a controlling interest, current and former directors and officers of BIOLASE and the legal representatives, heirs, successors, or assigns of any such excluded Person or entity. Also

excluded from the Settlement Class are those Persons who timely and validly request exclusion from the Settlement Class pursuant to the Notice.

(Settlement Agreement §§ 1.28-1.29.)

## IV.  <u>PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT</u>

To preliminarily approve a proposed class-action settlement, Rule 23(e)(2) requires the Court to determine whether the proposed settlement is fair, reasonable, and adequate.  Fed. R. Civ. P. 23(e)(2).  "To determine whether a settlement agreement meets these standards, a district court must consider a number of factors, including: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement."  *Staton v. Boeing Co*., 327 F.3d 938, 959 (9th Cir. 2003) (internal citation and quotation marks omitted).  "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case."  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).  "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness, and the settlement must stand or fall in its entirety."  *Staton*, 327 F.3d at 960 (quoting *Hanlon*, 150 F.3d at 1026) (alterations omitted).

In addition to these factors, where "a settlement agreement is negotiated *prior* to formal class certification," the Court must also satisfy itself that "the settlement is not the product of collusion among the negotiating parties."  *In re Bluetooth Headset*

*Prods. Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011) (internal citations and quotations omitted) (emphasis in original).  Accordingly, the Court must look for explicit collusion and "more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Id.* at 947.  Such signs include (1) "when counsel receive a disproportionate distribution of the settlement," (2) "when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds," and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund."  *Id.* (internal citations and quotation marks omitted).

### A.     Strength of Lead Plaintiff's Case

While Lead Plaintiff emphasizes his belief in the merits of this case, he notes that Defendants vigorously litigated this case thus far, and there is no guarantee it would have survived the Motion to Dismiss.  (Mem. at 15-16.)  Moreover, Defendants likely would have vigorously contested the case at other critical stages including class certification and/or decertification, summary judgment, and trial. Defendants' Motion to Dismiss raised numerous arguments as to whether the statements underlying this case were actually false and, if so, made with the requisite scienter.  In addition, Defendants raised credible arguments as to loss causation.  The Court finds these potential obstacles to Lead Plaintiff's case weigh in favor of preliminary approval.

### B.     Risk, Complexity, and Likely Duration of Further Litigation

Lead Plaintiff notes that "[i]f the Settlement is not approved, the Settlement Class would have to assume the risk that the Motions to Dismiss could be granted in whole or in part."  (Mem. at 18.)  Moreover, Lead Plaintiff correctly notes that if the

1  case were to proceed past that point, Biolase would likely hotly contest class

2  certification and, if that were granted, pursue later decertification.  (Id.)  Lead

3  Plaintiff also states that numerous recent Supreme Court decisions have increased

4  the difficulty of obtaining class certification in the securities context.  (Id.)

5  Settlement eliminates these risks and may be the last chance for class members to

6  obtain relief.  This factor therefore weights in favor of preliminary approval.

7

8      **C.**     **<u>Stage of the Proceedings</u>**

9          This case remains in its infancy; as noted above, the parties reached this

10  settlement days before the scheduled hearing on Defendants' Motion to Dismiss.

11  Nevertheless, the Court is satisfied that Lead Plaintiff is sufficiently abreast of the

12  facts and law of this case to make an informed settlement decision.  The

13  Consolidated Class Action Complaint and Motion to Dismiss briefing evidence a

14  deep familiarity with the relevant SEC filings, press releases, analyst reports,

15  conference call transcripts, and news articles.  Class Counsel conducted further

16  investigation including interviewing former Biolase employees and working with a

17  damages expert.  In addition, Class Counsel represent that they are now conducting

18  "confirmatory discovery" including reviewing additional documents provided by

19  Biolase and interviewing Defendants Furry and Arrow.  (Mem. at 20.)  Given these

20  facts, the Court concludes that, despite this relatively early settlement and lack of

21  formal discovery, Lead Plaintiff possesses sufficient information to make an

22  informed settlement decision.  *See In re Mego*, 213 F.3d at 459 (finding plaintiffs

23  had "sufficient information to make an informed decision about the [s]ettlement"

24  where formal discovery had not been completed but class counsel had "conducted

25  significant investigation, discovery and research, and presented the court with

26  documentation supporting those services").

27

28

1

### D.    Risk of Maintaining Class Certification

2        The Court has not been made aware of any specific risks of maintaining class

3 certification were the case to go to trial.  Accordingly, the Court need not consider

4 this factor for settlement purposes.  *See In re Veritas Software Corp. Sec. Litig.*, No.

5 C-03-0283 MMC, 2005 WL 3096079, at *5 (N.D. Cal. Nov. 15, 2005) (favoring

6 neither approval nor disapproval of settlement where the court was "unaware of any

7 risk involved in maintaining class action status"), *aff'd in relevant part*, 496 F.3d

8 962 (9th Cir. 2007); *Murillo v. Pac. Gas & Elec. Co.*, No. CIV. 2:08-1974 WBS

9 GGH, 2010 WL 2889728, at *7 (E.D. Cal. July 21, 2010) (favoring neither approval

10 nor disapproval of settlement where the court was "unaware of any specific

11 difficulty in maintaining class-action status were [the] case to continue to trial").

12

13

### E.    Amount Offered in Settlement

14        The Settlement provides for a Gross Settlement Fund of $1,750,000, which is

15 a substantial benefit to the class.  (Settlement Agreement § 1.2, 2.1.)  The Settlement

16 Fund will bear the costs of settlement administration, which are limited to $100,000.

17 (Settlement Agreement § 2.3.)  Thus, after notice and administration costs and

18 litigation expenses, the Settlement Fund will contain roughly $1,650,000.  This

19 represents approximately 8% of the maximum recoverable damages of $22,100,000

20 estimated by Lead Plaintiff.  (Mem. at 19.)  This equals or surpasses the recovery in

21 many other securities class actions.  *See In re Omnivision Techs., Inc.*, 559 F. Supp.

22 2d 1036, 1042 (N.D. Cal. 2008) (approving an settlement amount in the range of

23 6%-9% of the total possible damages and noting that this is "higher than the median

24 percentage of investor losses recovered in recent shareholder class action

25 settlements"); *In re Heritage Bond Litig.*, No. 02-ML-1475-DT (RCx), 2005 WL

26 1594389, *8 (C.D. Cal. June 10, 2005) (noting that the average amount recovered in

27 securities class action settlements was 2.7% in 2002, 2.8% in 2003, and 2.3% in

28

2004).   Considering the difficulties of potential recovery in this case, the Court finds that the amount offered in settlement weighs in favor of preliminary approval.

### F.   Experience and Views of Counsel

"The recommendations of plaintiffs' counsel should be given a presumption of reasonableness."  *In re Omnivision*, 559 F. Supp. 2d at 1043 (internal citation and quotation marks omitted).  As discussed above, Class Counsel have significant experience serving as plaintiffs' counsel in securities class actions, and have fully endorsed the settlement agreement as fair, reasonable, and adequate.  (Settlement Agreement at 5.)  Therefore, the recommendation of counsel also weighs in favor of approving the settlement.

### G.   Reaction of Class Members to Proposed Settlement

While Class Counsel states in the moving papers that Lead Plaintiff supports the settlement – a statement not corroborated with a supporting declaration from Lead Plaintiff – other settlement class members have not yet had the opportunity to evaluate the proposed settlement and submit any objections.  (*See* Mem. at 21.)  The Court agrees with Lead Plaintiff that evaluation of this factor is more proper at the final approval stage.  Prior to the Fairness Hearing, Class Counsel shall submit a declaration from Lead Plaintiff and a sufficient number of declarations from other class members discussing their reactions to the proposed settlement.  A small number of objections at the time of the fairness hearing may raise a presumption that the settlement is favorable to the class.  *See Omnivision*, 559 F. Supp. 2d at 1043.

### H.   Signs of Collusion

The Court finds no signs, explicit or subtle, of collusion between the parties. Under the Settlement Agreement, attorneys' fees are to be awarded from the Gross

1   Settlement Fund, and therefore, there is no "clear sailing" arrangement.  (Settlement

2   Agreement §§ 6.5, 7.1.)  Furthermore, the Court is to determine the proportion of

3   the Settlement Fund that will be awarded as attorneys' fees.  (Id.)  Finally, the

4   Settlement provides for any balance remaining in the Settlement Fund after six

5   months to be redistributed to settlement class members "who negotiated the checks

6   sent to them in the initial distribution and who would receive at least $10.00 from

7   such redistribution . . . ."  (Settlement Agreement § 6.10.)  Any remaining amount in

8   the Settlement Fund would go to the designated *cy pres* recipient.  (Id.)  Therefore,

9   the Court finds that these factors weigh in favor of approval.

10

11   **I.**   <u>**Conclusion**</u>

12   Based on the foregoing, the Court concludes the Settlement Agreement is fair,

13   reasonable, and adequate and finds preliminary approval is appropriate.

14   The Settlement Agreement is deficient in only one respect – it fails to

15   designate a specific *cy pres* recipient to which any undistributed amount of the

16   Settlement Fund will be sent.  While this does not warrant denial of preliminary

17   approval, Class Counsel shall identify a specific *cy pres* recipient and submit it to

18   the Court for approval within **21 days** of this Order.  Class Counsel should bear in

19   mind that even a worthy nonprofit organization will not be found to be a proper *cy*

20   *pres* recipient if it bears no relation to the class.  *See, e.g.*, *Dennis v. Kellogg Co*.,

21   697 F.3d 858, 865 (9th Cir. 2012); *see also Brandon Johnson v. Metlife Inc. et al.*,

22   Case No. SACV 13-128-JLS (RNBx) (C.D. Cal. Jan. 25, 2013), ECF Nos. 43, 46.

23

24   **V.**   <u>**PRELIMINARY APPROVAL OF CLASS NOTICE FORM**</u>

25   <u>**AND METHOD**</u>

26   For a class certified under Rule 23(b)(3), "the court must direct to class

27   members the best notice that is practicable under the circumstances, including

28

1   individual notice to all members who can be identified through reasonable effort."

2   Fed. R. Civ. P. 23(c)(2)(B).  However, actual notice is not required.  *See Silber v.*

3   *Mabon,* 18 F.3d 1449, 1454 (9th Cir. 1994).

4         Here, the Settlement Agreement provides that within ten days of preliminary

5   approval, Defendants will use "reasonable efforts" to provide Lead Counsel with the

6   last known names and addresses of all purchasers of Biolase stock during the class

7   period.  (Settlement Agreement § 6.2.)  Biolase will bear the expense of providing

8   this information.  (Id.)  The Claims Administrator will then mail the proposed

9   Notice and Proof of Claim.  If the mail is returned, the Claims Administrator will

10  attempt to locate the class member's new address through the National Change of

11  Address database.  If an updated address is found, the Claims Administrator will

12  mail the documents to that address.  Notice by mail has been found by the Supreme

13  Court to be sufficient if the notice is "reasonably calculated . . . to apprise interested

14  parties of the pendency of the action and afford them an opportunity to present their

15  objections."  *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314

16  (1950).  In addition, Lead Plaintiff will provide a summary notice by publication in

17  Investor's Business Daily.  (Settlement Agreement §§ 1.23, 2.3.)

18        Plaintiff has provided the Court with a copy of the proposed notice.  (*See*

19  Proposed Notice, Doc. 74-2, Ex. A-1; Proposed Proof of Claim, Doc. 74-3, Ex. A-

20  2.)  Under Rule 23, the notice must include, in a manner that is understandable to

21  potential class members, "(i) the nature of the action; (ii) the definition of the class

22  certified; (iii) the class claims, issues, or defenses; (iv) that a class member may

23  enter an appearance through an attorney if the member so desires; (v) that the court

24  will exclude from the class any member who requests exclusion; (vi) the time and

25  manner for requesting exclusion; and (vii) the binding effect of a class judgment on

26  members under Rule 23(c)(3)."  Fed. R. Civ. P. 23(c)(2)(B).

27        Here, the proposed notice includes information about the nature of the

28

litigation, the scope of the class involved, and claims against Defendants.  (Proposed Notice.)  The proposed notice clearly explains that class members must file a Claim Form in order to receive any part of the settlement, that they must send some notification to the claims administrator to opt out of the proposed class, and that by doing nothing, they give up any right to sue the Defendants or the Released Parties for the claims released by the Settlement Agreement.  (Id.)  Accordingly, the Court finds the proposed notice sufficient as to both the method of delivery and contents, provided the following modifications are made:

- Class Counsel shall ensure all dates and deadlines in the Notice and Proof of Claim forms conform to those set forth by the Court below, which differ slightly from the dates proposed by counsel.

- Under Section 21, "How Will the Lawyers Be Paid?", the Notice should clearly set forth that Class Counsel's motion for attorneys' fees and costs will be filed before the deadline to object or opt out.

- Under Section 26, "May I Speak at the Hearing?", the Notice should give the Court's address in full rather than referring the reader to Section 22 which, in any case, gives only the Claims Administrator's address, not the Court's.

- Under Section 28, "Are There More Details About the Settlement?", the Notice should state that all papers filed in this action will be available for review as part of the Court's files in this matter at the Office of the Clerk of Court or "via the Court's PACER (Public Access to Court Electronic Records) website," along with PACER's URL (http://www.pacer.gov).

The parties must provide an updated copy of the Notice and related forms within **10 days** of this order reflecting the changes identified above.

## VI.   **CONCLUSION**

For the foregoing reasons, the Court GRANTS the Motion and PRELIMINARILY APPROVES the settlement.  In addition, the Court sets the following dates:

| Event | Date |
|---|---|
| Mail Notice | June 15, 2015 |
| Submit Updated Notice to Court | June 15, 2015 |
| Submit *Cy Pres* Recipient to Court for Approval | June 25, 2015 |
| Publication Notice | June 30, 2015 |
| Deadline to Submit Proofs of Claim | August 15, 2015 |
| Briefs in Support of Final Approval and Attorneys' Fees Request | September 4, 2015 |
| Last Date to Object / Opt Out | September 24, 2015 |
| Fairness Hearing | October 9, 2015, at 2:30 p.m. |

DATED:   June 5, 2015

_____
JOSEPHINE L. STATON
UNITED STATES DISTRICT JUDGE