UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| IN RE BIOLASE, INC. SECURITIES LITIGATION | CASE NO. SACV 13-1300-JLS (FFMx) **ORDER GRANTING LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL OF THE PROPOSED SETTLEMENT, CLASS CERTIFICATION, AND THE PLAN OF ALLOCATION AND FOR APPROVAL OF FEE AND EXPENSE APPLICATION (DOC. 86)** |
|---|---|

## I. INTRODUCTION

Before the Court is the Motion filed by Lead Plaintiff Pradeep Khurana for Final Approval of the Proposed Settlement, Class Certification, and the Plan of Allocation, and the second is for Approval of Fee and Expense Application.[1] (Doc. 86). Having reviewed the papers, held a fairness hearing, and taken the matter under submission, the Court GRANTS the Motion.

## II. BACKGROUND

### A. Procedural History

In August 2013, two proposed class actions were filed against Defendants Biolase, Inc., Federico Pignatelli, Alexander K. Arrow, and Frederick D. Furry. The two cases were captioned *Brady Adams v. Biolase, Inc. et al.*, Case No. SACV 13-1300-JLS (FFMx) (C.D. Cal. Aug. 23, 2013) and *Ralph Divizio v. Biolase Inc. et al.*, Case No. SACV 13-1317-JLS (FFMx) (C.D. Cal. Aug. 26, 2013). On December 10, 2013, the Court consolidated these cases into the present action and appointed Pradeep Khurana as Lead Plaintiff. (Doc. 31.) The Court also appointed Sandy Liebhard and Joseph Seidman, Jr. as lead counsel for the putative class and Avi Wagner as liaison counsel. (Id.)

Lead Plaintiff filed a Consolidated Class Action Complaint for violations of federal securities laws on February 24, 2014, asserting claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 on behalf of "all persons who purchased Biolase common stock [between] November 5, 2012 through August 13, 2013 . . . ." (Compl., Doc. 36, ¶ 1.) Lead Plaintiff alleges Defendants made materially false and misleading statements about (1) the growth of, and demand for, Biolase's WaterLase dental laser systems, (2) the general acceptance and adoption of dental lasers by dentists, (3) Biolase's

---

[1] Lead Plaintiff's Motion is supported by two separate Memoranda in Support. The first addresses the proposed settlement and allocation plan (Doc. 87), and the second addresses the issue of attorney fees (Doc. 88.) The Court cites to these Memoranda as the "Class Settlement Motion" and the "Fee Motion."

liquidity, and (4) a "near-term liquidity/cash crisis Biolase was experiencing." (Id. ¶ 3.) Lead Plaintiff alleges these statements artificially inflated Biolase's stock price and that when the statements' falsity became known, the stock price fell to the damage of class members. (Id. ¶ 29.)

On May 9, 2014, Defendants moved to dismiss the Complaint. (Docs. 41, 42.) Shortly before the hearing, the parties agreed in principle to settle the case. (Doc. 63.) On April 13, 2015, Lead Plaintiff moved for preliminary approval of the settlement and approval of the form and method of class notice. (Doc. 73.) The Court preliminarily approved the settlement on June 5, 2015 but noted that the agreement failed to designate a *cy pres* recipient to which any undistributed amount of the Settlement Fund would be sent. (Prelim. Approval Order at 18, Doc. 79.) The Court also found the proposed notice sufficient as to both its contents and method of delivery, provided that certain modifications were made to the Notice and Proof of Claim Forms. (*See* id. at 20.) Lead Plaintiff timely identified a *cy pres* recipient and submitted revised Notice and Proof of Claim forms with the ordered modifications for the Court's review. (Cy Pres Mot., Doc. 82; Revised Notice Forms, Doc. 80.) On June 30, 2015, the Court approved Lead Counsel's proposal of Loyola University's Institute for Investor Protection as the *cy pres* recipient in this action. (Cy Pres Order, Doc. 83.)

### B. The Settlement

The Settlement Agreement provides for a Gross Settlement Fund of $1,750,000, which Defendants agreed to deposit into an escrow account within ten days of preliminary approval. (Settlement Agreement §§ 1.2, 1.31, 2.1, Doc. 74-7.) The Settlement Agreement also permits Lead Plaintiff's counsel to apply for attorneys' fees of up to 25% of the Gross Settlement Fund as well as reimbursement of costs (id. § 7.1), and to allocate up to $100,000 of the Gross Settlement Funds for settlement administration costs, (id. § 2.3). After deduction of attorneys' fees and costs, claims administration costs, and any

taxes (*see* id. § 2.8), the remaining Net Settlement Fund is to be distributed to class members who timely submit a Proof of Claim on a *pro rata* basis. (Id. § 6.5.) Individual allocations depend on (1) when claimants purchased or acquired shares as compared to the alleged corrective disclosure date, (2) the amount of time that claimants held Biolase shares during the class period, and (3) the relative amounts of artificial inflation that affected Biolase stock prices during the class period. (Chiango Decl. Ex. A at 5-8, Doc. 90-1.)

The Gross Settlement Fund is non-reversionary. Following distribution, any remaining balance after six months will be redistributed on a *pro rata* basis to those class members who timely negotiate their checks and would receive at least $10 from such redistribution. (Settlement Agreement § 6.10.) Any remaining balance will then be donated to Loyola University's Institute for Investor Protection as the *cy pres* recipient in this action. (*See* id.; Cy Pres Order.)

Upon the Court's final approval, class members will release all claims against Defendants "arising out of, based upon, or concerning the purchase of Biolase common stock during the Class Period in connection with the subject matter of the Litigation and the acts, facts, statements or omissions that were or could have been alleged" in it. (Settlement Agreement §§ 1.24, 1.8, 8.1.)

### C. Notice and Response

Notice was sent to class members pursuant to the method approved by the Court. The amended Notice and Proof of Claim forms briefly describe the litigation and the scope of the involved Class. (Chiango Decl. Ex. A.) Additionally, the Notice explains (1) the amount and makeup of the Settlement Fund, (2) the plan of allocation, (3) that Plaintiff's Counsel will apply for an award of attorneys' fees in an amount not to exceed 25% of the settlement fund, as well as reimbursement of litigation expenses in an amount not to

1 exceed $100,000, and (4) class members' options to submit a claims form, opt out of the
2 settlement, and/or object to the settlement.  (Id.)

3      RG/2 Claims Administration LLC became the class action settlement administrator
4 in this action.  (*See* Chiango Decl. at 1, Doc. 90.)  On June 4, 2015, RG/2 received a file
5 that included the names, addresses, and number of shares for 168 certificate holders of
6 Biolase stock during the Class period.  (Chiango Decl. ¶ 1.)  RG/2 processed these 168
7 names and addresses through the U.S. Postal Service National Change of Address database
8 to verify, standardize, and correct the identified mailing addresses.  (Id.)  A total of 19
9 records returned with new addresses, which were then updated in the Biolase mailing
10 database.  (Id.)

11      On June 15, 2015, RG/2 mailed the Notice and Proof of Claim forms (together
12 "Notice Packet") to all 168 certificate holders, as well as 351 brokers or potential third-
13 party nominees who held Biolase shares on behalf of a beneficial purchaser.  (Chiango
14 Decl. ¶¶ 1-4.)  RG/2 also mailed these brokers and nominees an instruction to either (1)
15 provide the names and addresses of their clients who purchased Biolase stock during the
16 class period, or (2) request copies of the Notice Packets in bulk so they can perform their
17 own mailing.  (Id. ¶ 4.)  RG/2 received requests for 10,165 Notice Packets to be delivered
18 to various nominees in bulk, as well as the names and addresses of potential settlement
19 class members for direct mailing.  (Id. ¶ 6.)  RG/2 has therefore mailed a total of 10,581
20 Notice Packets via first-class mail to potential settlement class members and nominees.
21 (Chiango Suppl. Decl. ¶ 3, Doc. 93.)  RG/2 also (1) published the Notice Packet in the
22 Depository Trust & Clearing Corporation Legal Notice System, the national edition of
23 *Investor's Business Daily*, and *PRNewswire*, and (2) created a toll-free number and website
24 to assist potential settlement class members.  (Chiango Decl. ¶¶ 5, 8, 9, 10.)

25      Settlement class members had until August 15, 2015 to submit Proof of Claim
26 forms.  (*See* Prelim. Approval Order at 21.)  As of October 2, 2015, RG/2 has received
27 1,255 claim forms from settlement class members.  (Chiango Suppl. Decl. ¶ 7.)  Class
28

members had until September 24, 2015 to object to or opt out of the class settlement. (*See* Prelim. Approval Order at 21.) As of October 2, 2015, RG/2 has not received any requests for exclusion from the settlement class, nor has it received any objections to the settlement, the plan of allocation, or the fee and expense application. (Chiango Suppl. Decl. ¶¶ 4, 5.) RG/2 did receive a complaint from settlement class member Arun Kumar Bhattacharya related to the claims administration process, which was filed by Lead Counsel as an objection to the claims administrator. (*See* Bhattacharya Objection Ex. A, Doc. 85-1.) Bhattacharya objected to alleged delays and rude behavior he encountered when calling RG/2 with questions about the claims process. (*See* id. ¶¶ 2-18.) RG/2 reached out to Bhattacharya and accepted his claim form on August 4, 2015. (Chiango Decl. ¶ 15.) However, Bhattacharya sent a complaint to Lead Counsel on August 10, 2015 requesting that the Court either (1) remove RG/2 as claims administrator or (2) order reimbursement of his phone and internet charges and compensation for his emotional distress. (Bhattacharya Objection Ex. A ¶ 19; Notice of Continued Objection, Doc. 94.)

The Court's Preliminary Approval Order also directed Lead Plaintiff to submit declarations from class members discussing their reactions to the proposed settlement. (Prelim. Approval Order at 17.) Accordingly, Lead Plaintiff submitted statements from himself and five other class members that provided positive reactions to the settlement. (Haber Decl. Exs. 2-7, Doc. 89.)

## III. CLASS CERTIFICATION FOR PURPOSES OF SETTLEMENT

Where, as here, "the parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). The first step is to determine whether a class exists. *Id.* (citing *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997)). In its Preliminary Approval Order, the Court discussed the propriety of conditional class certification for the purposes of

1  settlement. (Prelim. Approval Order at 6-13.) The Court also discussed the adequacy of
2  Lead Counsel as Class Counsel. (Id. at 9-10.) The Court sees no reason to depart from its
3  previous conclusion regarding the existence of a proper settlement class or its appointment
4  of Lead Counsel as Class Counsel. The Court therefore incorporates its class certification
5  analysis from the Preliminary Approval Order into the instant Order.
6       Accordingly, the Court GRANTS the Motion as to final approval of conditional
7  class certification for the purposes of settlement.
8
9  **IV.**    **FINAL APPROVAL OF CLASS NOTICE**
10      Lead Plaintiff requests that the Court grant final approval of the form and method of
11 class notice. (Class Settlement Memo. at 18-21.) Rule 23 of the Federal Rules of Civil
12 Procedure requires notice of a settlement to be "the best notice that is practicable under the
13 circumstances, including individual notice to all members who can be identified through
14 reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). In its Preliminary Approval Order, the
15 Court discussed the sufficiency of the proposed Notice as to both its content and method of
16 delivery, provided that certain modifications be made to the Notice and Proof of Claim
17 form. (*See* Prelim. Approval Order at 18-20.) Given that the ordered modifications were
18 timely made before RG/2 mailed the Notice Packets to the Settlement Class, the Court sees
19 no reason to depart from its previous conclusion regarding the sufficiency of the content
20 and method of class notice. The Court therefore incorporates its class notice analysis from
21 the Preliminary Approval Order into the instant Order.
22      Accordingly, the Court GRANTS the Motion as to final approval of class notice.
23
24 **IV.**    **FINAL APPROVAL OF THE CLASS SETTLEMENT**
25      **A.**    **Legal Standard**
26      Before approving a class-action settlement, Rule 23 of the Federal Rules of Civil
27 Procedure requires the Court to determine whether the proposed settlement is fair,
28

reasonable, and adequate. Fed. R. Civ. P. 23(e)(2). "To determine whether a settlement agreement meets these standards, a district court must consider a number of factors, including: [1] the strength of plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed, and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant; and [8] the reaction of the class members to the proposed settlement." *Staton*, 327 F.3d at 959 (internal citation and quotation marks omitted).[2] "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness, and the settlement must stand or fall in its entirety." *Staton*, 327 F.3d at 960 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

In addition to these factors, where "a settlement agreement is negotiated *prior* to formal class certification," the Court must also satisfy itself that "the settlement is not the product of collusion among the negotiating parties." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011) (internal citations and quotations omitted) (emphasis in original). Accordingly, the Court must look for explicit collusion and "more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Id.* at 947. Such signs include (1) "when counsel receive a disproportionate distribution of the settlement," (2) "when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds," and (3) "when the parties arrange for fees not

---

[2] Factor [7], the presence of a governmental participant, does not apply to this case.

awarded to revert to defendants rather than be added to the class fund." *Id.* (internal citations and quotation marks omitted).

### B.      Discussion

The Court finds that the factors listed above favor final approval of the proposed settlement.

#### 1.      Strength of Lead Plaintiff's Case

While Lead Plaintiff emphasizes his belief in the merits of this case, he notes that Defendants have vigorously litigated this case and there is no guarantee it would have survived dispositive motions. (Class Settlement Mot. at 6-7.) Defendants' Motion to Dismiss raised numerous arguments as to whether the statements underlying this case were actually false, made with the requisite scienter, or protected by a safe harbor provision. (Id. at 7.) In addition, Defendants raised credible arguments as to loss causation and damages. (Id. at 8.) The Court finds that these potential obstacles to Lead Plaintiff's case weigh in favor of granting final approval.

#### 2.      Risk, Complexity, and Likely Duration of Further Litigation

Lead Plaintiff argues that even if the case survived Biolase's Motion to Dismiss, Biolase would likely contest issues of scienter, causation, class certification, and damages. (Class Settlement Mot. at 7-8.) Lead Plaintiff states that if the case were to proceed, "the Parties would face years litigating the Litigation to final resolution . . . including discovery, dispositive motions, trial, and likely post-trial appeals." (Id. At 10.) Settlement eliminates these risks and may be the last chance for class members to obtain relief. This factor therefore weighs in favor of granting final approval.

#### 3.      Risk of Maintaining Class Certification

The Court has not been made aware of any specific risks of maintaining class

9

certification were the case to go to trial. Accordingly, the Court need not consider this factor for settlement purposes. *See Sullivan v. Am. Express Publ'g Corp.*, No. SACV 09-142-JST (ANx), 2011 WL 2600702, at *7 (C.D. Cal. June 30, 2011); *Murillo v. Pac. Gas & Elec. Co.*, No. 2:08-1974 WBS GGH, 2010 WL 2889728, at *7 (E.D. Cal. July 21, 2010).

### 4. Amount Offered in Settlement

The Court finds that the amount offered in settlement is reasonable.[3] The Settlement provides for a Gross Settlement Fund of $1,750,000, which is a substantial benefit to the class. (Settlement Agreement § 1.2, 2.1.) This amount represents approximately 8% of the maximum recoverable damages of $22,100,000 estimated by Lead Plaintiff. (Class Settlement Mot. at 12.) This equals or surpasses the recovery in many other securities class actions. *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (approving a settlement amount in the range of 6%-9% of the total possible damages and noting that this is "higher than the median percentage of investor losses recovered in recent shareholder class action settlements"); *In re Heritage Bond Litig.*, No. 02-ML-1475-DT (RCx), 2005 WL 1594389, *8 (C.D. Cal. June 10, 2005) (noting that the average amount recovered in securities class action settlements was 2.7% in 2002, 2.8% in 2003, and 2.3% in 2004). Considering the difficulties of potential recovery in this case, the Court finds that the amount offered in settlement weighs in favor of final approval.

The allocation of settlement funds is likewise reasonable. The plan of allocation considers (1) when claimants purchased or acquired shares as compared to the alleged corrective disclosure date, (2) the amount of time that claimants held Biolase shares during the class period, and (3) the relative amounts of artificial inflation that affected Biolase

---

[3] The Court addresses reimbursement of litigation costs and attorneys' fees in Sections V and VI below.

stock prices during the class period. (Chiango Decl. Ex. A at 5-8; Haber Decl. ¶¶ 90-91.) These distinctions between class members reflect the relative injuries suffered by individual class members. Accordingly, the plan provides each settlement class member with a *pro rata* share of the Net Settlement Fund. The Court finds this to be a fair and reasonable method of distributing settlement proceeds to settlement class members. *See In re MicroStrategy, Inc. Securities Litig.*, 148 F. Supp. 2d 654, 669 (E.D. Va. 2001) ("[T]he plan of allocation . . . fairly treats class members by awarding a *pro rata* share to every Authorized Claimant, but also sensibly makes interclass distinctions based upon, *inter alia*, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue."); *In re Oracle Securities Litig.*, No. C-90-0931-VRW, 1994 WL 502054, at *1 (N.D. Cal. 1994) ("A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable. It is also reasonable to allocate more of the settlement to class members with stronger claims on the merits." (citations omitted)). Finally, the Court has approved Lead Counsel's proposal of Loyola University's Institute for Investor Protection as the *cy pres* recipient for the unclaimed remainder of the Net Settlement Fund. (*See* Cy Pres Order, Doc. 83.)

Accordingly, this factor weighs in favor of granting final approval.

### 5. Extent of Discovery Completed and Stage of the Proceedings

This factor requires the Court to evaluate whether "the parties have sufficient information to make an informed decision about settlement." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998). As noted above, the parties reached this settlement early in the case, just days before the scheduled hearing on Defendants' Motion to Dismiss. Nevertheless, the Court is satisfied that Lead Plaintiff is sufficiently abreast of the facts and law of this case to make an informed settlement decision. The Consolidated Class Action Complaint and Motion to Dismiss briefing evidence a deep familiarity with the relevant SEC filings, press releases, analyst reports, conference call transcripts, and

news articles. Class Counsel conducted further investigations, including interviews of former Biolase employees and consultations with a damages expert. (Haber Decl. ¶¶ 8, 40.) Class Counsel also conducted confirmatory discovery, including reviews of additional documents provided by Biolase and interviews of Defendants Furry and Arrow. (Haber Decl. ¶ 9.) Given these facts, the Court concludes that, despite this relatively early settlement and lack of formal discovery, Lead Plaintiff possesses sufficient information to make an informed settlement decision. *See In re Mego Fin. Corp. Secs. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (finding plaintiffs had "sufficient information to make an informed decision about the [s]ettlement" where formal discovery had not been completed but class counsel had "conducted significant investigation, discovery and research, and presented the court with documentation supporting those services.").

Accordingly, this factor weighs in favor of granting final approval.

### 6.   Experience and Views of Counsel

"The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *In re Omnivision*, 559 F. Supp. 2d at 1043 (internal citation and quotation marks omitted). Class Counsel have significant experience representing plaintiffs in securities and other complex class actions, (Haber Fee Decl. Ex. 3, Doc. 89-9; Wagner Fee Decl. Ex. 3, Doc. 89-10), and Class Counsel fully endorse the settlement agreement as fair, reasonable, and adequate, (Haber Decl. ¶ 13). Accordingly, this factor weighs in favor of granting final approval.

### 7.   Reaction of Class Members to Proposed Settlement

As discussed above, RG/2 sent approximately 10,581 notices by first class mail. RG/2 received 1,255 claim forms from settlement class members, but no class member objected to or opted out of the settlement. (Chiango Suppl. Decl. ¶¶ 4-5, 7.) Although claimant Bhattacharya filed a complaint against RG/2, this complaint relates specifically to

his interactions with RG/2 during the claims administration process and does not address either the settlement agreement or the plan of allocation. (*See* Bhattacharya Objection Ex. A; Chiango Decl. ¶¶ 13-15.)[4] Class counsel also provided six declarations from Lead Plaintiff and other class members, which all reflected positive reactions to the settlement agreement. (*See* Haber Decl. Exs. 2-7.)

Given the positive reactions to the settlement and the absence of objections or opt-outs, this factor weighs in favor of granting final approval. *See In re Omnivision*, 559 F. Supp. 2d at 1043 ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members." (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528-29 (C.D. Cal. 2004)).

### 8. Signs of Collusion

The Court finds no signs, explicit or subtle, of collusion between the parties. Under the Settlement Agreement, attorneys' fees are to be awarded from the Gross Settlement Fund, and therefore, there is no "clear sailing" arrangement. (Settlement Agreement §§ 6.5, 7.1.) Furthermore, the Court is to determine the proportion of the Settlement Fund that will be awarded as attorneys' fees. (Id.) Finally, the Settlement provides for any balance remaining in the Settlement Fund after six months to be redistributed to settlement class members "who negotiated the checks sent to them in the initial distribution and who would receive at least $10.00 from such redistribution . . . ." (Settlement Agreement § 6.10.) Any remaining amount in the Settlement Fund will go to Loyola University's Institute for Investor Protection as the Court-approved *cy pres* recipient. (*See* Cy Pres

---

[4] To the extent Claimant Bhattacharya seeks to file a formal Complaint against RG/2 for damages, he must do so independent of this action in either state or federal court in a manner that complies with the relevant rules of civil procedure. The Court finds that his complaints do not contain relevant objections to the class settlement.

13

Order.)

Accordingly, the Court finds that this factor weighs in favor of granting final approval.

### 9. Conclusion

Having considered the above factors, the Court finds the proposed settlement to be fair, reasonable, and adequate. Accordingly, the Court GRANTS the Motion as to final approval of this class action settlement.

## V. **LITIGATION COSTS**

Class Counsel request that the Court approve $35,003.92 in litigation expenses and costs. (Fee Mot. at 17-19.) "Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters." *In re Omnivision*, 559 F. Supp. 2d at 1048. Class Counsel have documented their expenses incurred in prosecuting and resolving this action, which include filing and document fees, research fees, travel fees, and discovery expenses. (Fee Mot. at 17-18; Haber Fee Decl. ¶¶ 6-7, Ex. 2, Doc. 89-9; Wagner Fee Decl. ¶¶ 7-8, Ex. 2, Doc. 89-10.) The Court concludes that Class Counsel's expenses are reasonable and adequately documented.

Accordingly, the Court GRANTS the Motion as to Class Counsel's request for $35,003.92 in litigation costs.

## VI. **ATTORNEYS' FEES**

Rule 23 permits a court to award "reasonable attorneys' fees . . . that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "[C]ourts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prods.*, 654 F.3d at 941. The benchmark for a fee award in common fund cases is 25% of the recovery

obtained. *See id.* at 942 ("Where a settlement produces a common fund for the benefit of the entire class, . . . courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record for any 'special circumstances' justifying a departure."). The Ninth Circuit has identified a number of factors the Court may consider in assessing whether an award is reasonable, including: (1) the results achieved, (2) the risk of litigation, (3) the skill required and quality of work, and (4) the contingent nature of the fee and the financial burden carried by the plaintiffs. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002). Counsel's lodestar may also "provide a useful perspective on the reasonableness of a given percentage award." *Id.* at 1050.

Class Counsel seek an attorneys' fees award of $428,749.02, which is 25% of the Gross Settlement Fund after reimbursement of $35,003.92 in costs. (Fee Mot. at 16.) The requested fee is consistent with the Ninth Circuit's 25% benchmark, and the Court finds that the following factors weigh in favor of granting final approval of the requested fee.

### A.  Results Achieved

Class Counsel achieved a settlement that represents approximately 8% of the maximum potential damages. This percentage of recovery compares very favorably with recoveries in other securities class actions within this Circuit. *See In re Omnivision*, 559 F. Supp. 2d at 1042 (approving an settlement amount in the range of 6%-9% of the total possible damages and noting that this is "higher than the median percentage of investor losses recovered in recent shareholder class action settlements"); *In re Heritage Bond Litig.*, 2005 WL 1594389, at \*8 (noting that the average amount recovered in securities class action settlements was 2.7% in 2002, 2.8% in 2003, and 2.3% in 2004). The Court finds that the degree of success obtained in this settlement weighs in favor of finding the fee request reasonable.

15

### B. Risk of Litigation

The risks presented by this litigation also support approval of the 25% fee request. As discussed above, Plaintiffs would face many potential obstacles should the case proceed. While Lead Plaintiff emphasizes his belief in the merits of this case, Defendants have raised arguments as to whether the statements underlying this case were actually false, made with the requisite scienter, or are protected by a safe harbor provision. In addition, Defendants raise credible arguments as to loss causation and damages. In light of these considerations, the Court finds that this factor weighs in favor of finding the fee request reasonable.

### C. Skill Required and Quality of Work

The skill and quality of work evidenced in this case support approval of the 25% fee request. Here, Class Counsel conducted their own investigations by reviewing extensive documents as well as interviewing individual Defendants and numerous former employees. (Haber Decl. ¶¶ 8-9, 20.) Class counsel also worked with a loss causation and damages consultant in connection with confirmatory discovery. (Id. ¶¶ 8, 9, 41, 42, 86.) Moreover, Class Counsel have significant experience in complex federal civil litigation, particularly in the litigation of securities and other class actions. (*See* Haber Fee Decl. Ex. 3.) The quality of Class Counsel's work is further evidenced by the favorable settlement achieved on behalf of the settlement class. In light of these considerations, the Court finds that this factor weighs in favor of finding the fee request reasonable.

### D. Contingent Nature of the Fee and the Financial Burden Carried by Plaintiffs

Counsel took this case on a contingent basis and invested over 1,300 hours prosecuting and resolving the case. (Haber Fee Decl. ¶¶ 3-5, Ex. 1; Wagner Fee Decl. ¶ 4, Ex. 1.) Counsel also paid over $35,000 in reasonable and necessary litigation expenses.

16

(Haber Fee Decl. ¶¶ 6-7, Ex. 2; Wagner Fee Decl. ¶¶ 7-8, Ex. 2.) Class Counsel have received no compensation for their efforts during the course of litigation, and they undertook representation despite a sizeable risk that the settlement class would not obtain recovery. (Fee Mot. at 12-14.) In light of these considerations, the Court finds that this factor weighs in favor of finding the fee request reasonable.

### E. Lodestar Cross-Check

The reasonableness of this amount is confirmed by a cross-check with a lodestar comparison. *Vizcaino*, 290 F.3d at 1050-51. Here, Counsel expended a total of 1,352.05 hours in the investigation, prosecution, and resolution of the action. (Haber Fee Decl. ¶¶ 3-5, Ex. 1; Wagner Fee Decl. ¶ 4, Ex. 1.) Counsel state that the resulting lodestar is a total of $1,004,516.25. (Haber Fee Decl. ¶¶ 3-5, Ex. 1; Wagner Fee Decl. ¶ 4, Ex. 1.) Counsel's requested percentage fee amounts to $428,749.02, which constitutes only 43% of their lodestar. (Haber Decl. ¶ 120.) A negative multiplier in this context "suggests that the percentage-based amount is reasonable and fair based on the time and effort expended by class counsel." *See In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 WL 4171201, at *16 (N.D. Cal. Nov. 26, 2007).

### F. Conclusion

Considering all the circumstances described above, the Court finds that awarding attorneys' fees of 25% of the Settlement Fund is reasonable. Accordingly, the Court awards attorney's fees in the amount of $428,749.02, or 25% of the $1,750,000 settlement fund after reimbursement of expenses of $35,003.92. (*See* Haber Decl. ¶ 120.)

## VII. CONCLUSION

The Court finds the settlement to be fair, adequate, and reasonable, and accordingly GRANTS final approval of the settlement. The Court awards Class Counsel $35,003.92 in

costs and $428,749.02 in attorneys' fees, based on an award of 25% of the $1,750,000 settlement fund after reimbursement of the above costs.  Distribution of the settlement fund to claimants shall be made in accordance with the method outlined in the settlement.  If a *cy pres* distribution is necessary, the distribution shall be made to Loyola University's Institute for Investor Protection.

The parties shall submit a proposed judgment in accordance with this Order forthwith.

DATED:   October 13, 2015   _____
JOSEPHINE L. STATON
UNITED STATES DISTRICT JUDGE

18